RECOMMENDED FOR PUBLICATION
File Name: 22b0005p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

In re:  JULIE MARIE WOOD,

*Debtor*.

_____

JACK D. WOOD,

*Defendant-Appellant*,

*v*.

MICHAEL WHEATLEY, Trustee,

*Plaintiff-Appellee*.

No. 22-8003

Appeal from the United States Bankruptcy Court
for the Western District of Kentucky at Louisville.
No. 3:18-bk-32555; Adv. No. 19-3041—Alan C. Stout, Judge

Argued:  September 15, 2022

Decided and Filed:  December 13, 2022

Before: DALES, GUSTAFSON, and MASHBURN, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:**  Andrew S. Zeh, MAPLE LAW PLLC, Louisville, Kentucky, for Appellant.  Neil C. Bordy, SEILLER WATERMAN LLC, Louisville, Kentucky, for Appellee.  **ON BRIEF:** Andrew S. Zeh, MAPLE LAW PLLC, Louisville, Kentucky, for Appellant.  Neil C. Bordy, Joseph H. Haddad, SEILLER WATERMAN LLC, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

SCOTT W. DALES, Chief Bankruptcy Appellate Panel Judge.   Although this appeal involves what we view as a sea of red herrings, when the waters clear we base our decision upon a litigant's failure to meet the well-settled requirements for opposing a properly-supported summary judgment motion.   For the following reasons, the panel will affirm the Bankruptcy Court's judgment.

**JURISDICTION**

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal.   The United States District Court for the Western District of Kentucky has authorized appeals to the Panel, and no party timely elected to have the district court hear the appeal. 28 U.S.C. § 158(b)(6) and (c)(1).

Under 28 U.S.C. § 158(a)(1), the Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by a bankruptcy court.   "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case."  *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501, 135 S. Ct. 1686, 1692 (2015)).

The bankruptcy court entered a final judgment in the adversary proceeding after the parties stipulated to resolve the valuation question that remained following the court's decision on the motion for partial summary judgment.   The final judgment resolved the last issue in the case.   A judgment disposing of all claims against all parties in an adversary proceeding is a final order from which appeal as of right will lie.  *Matteson v. Bank of America, N.A.* (*In re Matteson*), 535 B.R. 156, 158–59 (B.A.P. 6th Cir. 2015).

This appeal also involves a challenge to the bankruptcy court's decision to deny a motion to amend a pleading under Federal Rule of Civil Procedure 15(a).[1] "Although the denial of a motion to amend an answer is generally a non-final order that is not immediately appealable, it is appealable after the entry of a final order which resolves all issues between the parties." *Pittman ex rel. Sykes v. Franklin*, 282 F. App'x 418, 423 (6th Cir. 2008).

At oral argument, Michael Wheatley ("Appellee") challenged the Panel's authority to hear this appeal by contending that it has become moot[2] because (1) one of the debtor's family members paid the claim of the principal creditor; (2) the debtor disclaimed any right to surplus from the Appellee's collection activity; and (3) Appellee had no present intention of pursuing collection from Jack Wood ("Appellant") or his property. When pressed, however, counsel for Appellee reported that his client would not waive any claims against Appellant, given the possibility, however remote, that Appellee may need to look to Appellant or his property to satisfy administrative or other claims.

Without an irrevocable waiver,[3] the Panel does not regard this appeal as moot because it is still possible to give Appellant effective relief:[4] a decision in his favor would absolve him from liability on the judgment from which he appeals, either to the estate or perhaps to co-defendants who did not appeal, should they assert claims in the future for contribution.

Consequently, the appeal is not moot, and the Panel may address it.

---

[1]Any Federal Rule of Civil Procedure is identified herein as "Rule __." The Federal Rules of Bankruptcy Procedure make the particular Federal Rules of Civil Procedure applicable in the adversary proceeding giving rise to this appeal.

[2]The Panel recently observed that "mootness in the Article III sense implicates a federal court's jurisdiction[.]" *In re Richards*, 642 B.R. 777, 781 (B.A.P. 6th Cir. 2022).

[3]Based on *Richards*, accepting Appellee's mootness argument, without insisting on a waiver of rights against Appellant, would put Appellee in the jurisdictional driver's seat. Congress—not a court and certainly not a litigant—drives that bus. *Cf. In re Thickstun Bros. Equip. Co., Inc. v. Encompass Svcs. Corp.* (*In re Thickstun Bros. Equip. Co., Inc.*), 344 B.R. 515, 522 (B.A.P. 6th Cir. 2006) ("[N]either the bankruptcy court nor the parties can write their own jurisdictional ticket.") (quoting *Binder v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 161 (3d. Cir. 2004)).

[4]Only if "it is impossible for a court to grant any effectual relief whatever" may the Panel dismiss the appeal as moot. *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019).

**BACKGROUND**

Long before his daughter, Julie Wood ("Debtor"), filed her chapter 7 bankruptcy petition, Appellant opened several bank accounts in her name with himself as either custodian or joint account holder. In addition, according to his testimony at one stage of his daughter's bankruptcy proceedings, he, his wife, the Debtor and his other daughter, held interests in an informal real estate business as joint venturers. This arrangement, according to his testimony as a witness in support of the Debtor's motion to convert her case from chapter 7 to chapter 13, permitted him to sprinkle losses from the real estate business for income tax purposes among his wife and two daughters according to their share of the business. He further testified that his handwriting on the bottom of his daughter's 2016 tax return, showing various percentages across from the initials of each family member, reflected each family member's share of what he testified was a "joint venture" (the "Joint Venture").

During the same hearing on his daughter's conversion motion, Appellant admitted that after it became clear that his daughter's ex-mother-in-law and principal creditor (Janice Gerstenecker), would begin collecting on a judgment, Appellant transferred the money out of bank accounts (the "Bank Accounts") that were held in his and his daughter's name to other accounts he controlled. Likewise, according to his own testimony, sometime later he and his wife removed the Debtor from the Joint Venture—again to put the property beyond the reach of Janice Gerstenecker. Although the point of making these transfers was readily apparent without Appellant's admission, he plainly admitted his intent to put these assets beyond the reach of his daughter's main creditor.

Based in large part on Appellant's testimony in support of the Debtor's conversion motion, the bankruptcy court denied the motion so that Appellee (as chapter 7 trustee) could administer the Debtor's share of the business or pursue chapter 5 and other claims related to the business and the Bank Accounts that Appellant testified about in open court.

Having participated in that same hearing where Appellant testified regarding the Joint Venture, the Debtor's tax returns, the Bank Accounts, and the transfers to prevent Janice Gerstenecker from reaching this property, Appellee, as the Debtor's bankruptcy trustee, filed a

complaint against Appellant, Jennifer D. Wood (the Debtor's sister), and Margaret E. Wood (her mother and collectively, the "Defendants") seeking to avoid and recover the transfers on preference and fraudulent conveyance theories.

After full discovery and mediation, the parties entered into a settlement and sought approval from the bankruptcy court. Janice Gerstenecker strenuously objected, ultimately persuading the bankruptcy court not to approve the settlement. Ever mindful of the Appellant's self-damning admissions during the hearing on the conversion motion, the bankruptcy court scrutinized the record and refused to approve the settlement, lifting up as reasons (1) the paltry recovery for the Debtor's principal creditor if the settlement were approved; and (2) the court's greater confidence in the trustee-plaintiff's likelihood of success premised, in part, on a prediction that the doctrine of judicial estoppel might support a greater recovery. The bankruptcy court applied well-settled factors in evaluating the proposed compromise. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 88 S. Ct. 1157 (1968) (discussing settlement factors); *Bard v. Sicherman* (*In re Bard*), 49 F. App'x 528, 530 (6th Cir. 2002) (same).

In evaluating the likelihood of success, the bankruptcy court treated the Defendants' answer, which admitted the existence of the Joint Venture, directly and indirectly, in at least five places, as a "judicial admission" establishing the portion of the case that the Appellee regarded as deficient, and the court observed that "even without the conclusive nature of the judicial admission, the Trustee *could* still prevail on this issue through the application of judicial estoppel." (Mem. at 23, Adv. P. 19-03041, ECF No. 71 (Aug. 17, 2021) (emphasis added).) The court did not opine that Appellee *would* prevail under the doctrine of judicial estoppel, but simply suggested that he "could," a reading Appellant's counsel confirmed during oral argument when reporting that his client no longer challenges the bankruptcy court's refusal to approve the settlement.

Promptly after the bankruptcy court rejected the settlement, the Defendants moved to amend their answer ("Motion to Amend"), asserting that the bankruptcy court had misconstrued it as conceding the existence of the Joint Venture or the Debtor's interest in the Joint Venture.

Around that same time, Appellee moved for partial summary judgment ("Motion for PSJ") on all counts and all issues, save for the value of the Debtor's interest in the alleged Joint Venture.

The bankruptcy court denied the Motion to Amend, finding unreasonable delay and prejudice, but also futility premised on the application of the judicial estoppel allegedly flowing from Appellant's earlier testimony about the Joint Venture. The court entered the order denying the amendment on October 12, 2021, which gave the Defendants approximately twenty days to oppose Appellee's Motion for PSJ. In fact, they timely filed a response. Thereafter, the bankruptcy court entered summary judgment against the Defendants, finding that (i) the Appellee had met his summary judgment burden of establishing a *prima facie* case; (ii) the burden of raising a genuine issue for trial shifted to the Defendants; but (iii) the Defendants failed to raise a genuine issue as to any material fact regarding the Debtor's ownership in the Bank Accounts, her share of the Joint Venture, and other elements of various causes of action under 11 U.S.C. §§ 544 (and related state fraudulent conveyance statutes), 547, 548, and 550. More specifically, the court first entered an order granting partial summary judgment against the Defendants under Rules 56 and 54.

After the parties stipulated to the value of the Debtor's interest in the Joint Venture (with Defendants preserving their argument that the Debtor has no interest in that asset), the bankruptcy court entered a final, summary judgment in Plaintiff's favor, disposing of all issues in the adversary proceeding under preference and fraudulent conveyance theories (actual and constructive).

Appellant alone appeals from the bankruptcy court's final judgment in the adversary proceeding,[5] bringing up for review the final decision and two subsidiary bankruptcy court orders: the Order dated Oct. 21, 2021, denying the Defendants' Motion to Amend Answer (the "Amendment Order") (Adv. P. 19-03041, ECF No. 88); and the Memorandum dated Dec. 7, 2021, granting the Motion for PSJ (the "PSJ Order") (Adv. P. 19-03041, ECF No. 109.)

---

[5]Although the orders and final judgment in this adversary proceeding apply to all the Defendants, only Jack Wood filed an appeal.

**DISCUSSION**

The gravamen of Appellant's argument on appeal is that the bankruptcy court misapplied the doctrine of judicial estoppel, placing undue reliance on Appellant's early testimony about the alleged Joint Venture in withholding approval of the amended answer and in entering summary judgment. In addition, Appellant asserts error in the bankruptcy court's supposed failure to determine the extent of his interest in the Bank Accounts at issue and, correspondingly, the extent of the Debtor's interest in those accounts. The Panel turns first to the Amendment Order.

1. Denial of Motion to Amend Under Rule 15

Because the Defendants had answered the complaint, albeit late but with the court's permission, any further amendment of their answer required their adversary's consent or the "court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 instructs that "the court should freely give leave when justice so requires." *Id*. As noted above, the bankruptcy court did not grant leave to amend.

We review the bankruptcy court's denial of the proposed amendment under Rule 15 for abuse of discretion. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). A bankruptcy court abuses its discretion when it (1) "relies upon clearly erroneous findings of fact," (2) "improperly applies the law," or (3) "uses an erroneous legal standard." *Nischwitz v. Miskovic* (*In re Airspect Air, Inc.*), 385 F.3d 915, 920 (6th Cir. 2004); *In re McInerney*, 490 B.R. 540, 546 (Bankr. E.D. Mich. 2013) (quoting *Paschal v. Flagstar Bank*, 295 F.3d 565, 576–77 (6th Cir. 2002) (An abuse of discretion may be found when the reviewing court is "left with the definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where the [trial court] improperly applies the law or uses an erroneous legal standard.") (citations and internal quotation marks omitted).

Appellant contends that the bankruptcy court abused its discretion by applying the doctrine of judicial estoppel based on the testimony that Appellant gave as a witness in a related but separate proceeding—the contested matter regarding his daughter's motion to convert. Although we tend to agree that the prior testimony of a witness (rather than a party) is probably

not a proper basis for invoking judicial estoppel, it does not follow that the bankruptcy court erred in denying the motion to amend the answer.

The parties evidently agree that the following oft-cited Supreme Court passage from *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962), must guide the exercise of a trial court's discretion to approve, or withhold approval of, an amendment under Rule 15. *Foman* teaches that the court's leave to amend is not automatic. Although courts should freely permit amendment, *Foman* itself observed that where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment," leave to amend should be denied. *Id.*

In denying the amendment, the bankruptcy court found substantial and prejudicial delay in proposing the amendment, citing the length of time (590 days) between the filing of the original answer and the motion to amend, and the fact that discovery was complete and trial was imminent. The court stated that allowing the amendment on the eve of trial would require the estate to spend substantial resources "to conduct discovery into a point that was previously admitted by the Defendants." (Amendment Order at 9-10, ECF No. 88.) The bankruptcy court also accepted Appellee's main argument that the amendment would be "futile in light of this Court's previous ruling referencing judicial estoppel." (*Id.* at 10.) Appellant challenges each basis for denying the amendment.

First, Appellant argues that delay alone does not justify withholding the amendment—a fair point under our reading of the cases. *See*, *e.g.*, *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). Moreover, at oral argument on appeal, his counsel explained that several months elapsed between the conclusion of mediation and the findings on the settlement motion, making the delay seem more reasonable.

Second, Appellant argues that Appellee, without regard to the answer, sought approval of the settlement a few weeks earlier on the basis that a settlement was in the best interest of the estate because Appellee was unable to establish the Debtor's interest in the Joint Venture, despite the opportunity for discovery. The Panel notes that Appellee did not advocate either delay or

prejudice in his written opposition to the proposed amendment, instead arguing only the court's previous judicial estoppel finding.  Nevertheless, Appellant's prior deposition testimony, in which he admitted that he had destroyed the documents reflecting his transfers of the assets, certainly justified the bankruptcy court's view of prejudice and bad faith.  (Appellant's Dep. at 31:12-16, Case No. 18-32555, ECF No. 95.)

Finally with respect to the denial of the proposed amendment, Appellant challenges the bankruptcy court's reliance on the doctrine of judicial estoppel.  The Supreme Court, in a rare case involving the high court's exercise of its original jurisdiction, set forth the guiding explication of the doctrine:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."  *Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000); see 18 Moore's Federal Practice § 134.30, p. 134–62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

*New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 1814 (2001).  The Sixth Circuit takes a very similar approach, describing the doctrine as "(1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (internal quotation marks and citation omitted).  The court recently fortified the doctrine in the bankruptcy context, emphasizing the role it plays in preserving the "integrity of the courts" and protecting the "judicial process." *Stanley v. FCA US, LLC*, 51 F.4th 215, 218 (6th Cir. 2022) (quoting *White v. Wyndham Vacation*

*Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quoting *Browning*, 283 F.3d at 776)).  The doctrine abhors "cynical gamesmanship."  *Id*. at 218.

The bankruptcy court couched its decision, at least in part, in the language of judicial estoppel and the resulting futility of the amended answer, but the connection between judicial estoppel and "bad faith or dilatory motive" (in the language of *Foman*) could hardly be closer.

The bankruptcy court previously expressed misgivings about Appellant's motives in this proceeding, punctuating its decision to withhold approval of the settlement with the following, telling observation: "Jack Wood has very little credibility before this Court, having demonstrated a willingness to bend the truth to suit his needs at any time."  (Mem. at 27, ECF No. 71.)  The bankruptcy court arrived at this unflattering view of Jack Wood's conduct in these proceedings after receiving his testimony on at least two occasions (in connection with the conversion motion and later when considering whether to approve the settlement), based on the record that he largely developed when he served as his own, and the other Defendants', counsel. This is precisely the sort of intelligence that *Foman* suggests should inform the exercise of a trial court's discretion in deciding whether to grant leave to amend.  A bankruptcy court's familiarity with a litigant's shifting positions throughout a bankruptcy case sensibly informs its view about whether to reject an amended pleading on the grounds of bad faith.

Moreover, the bankruptcy court understandably rejected the suggestion—repeated on appeal—that Appellant's answer to the complaint's allegations involving the Joint Venture was unclear and somehow misunderstood.  To illustrate, the Panel reprints the relevant allegations from the complaint here, allegations Appellant admitted without equivocation:

> 34. The following is handwritten on the bottom of Schedule E of the Debtor's 2016 Tax Return (Ex. 13 at 4):
>
> > J & M = 60%
> >
> > J      - 20%
> >
> > J       -20%
>
> 35. Jack testified that the handwriting signifies the division of a real estate joint venture, with the Debtor possessing a 20% interest, Jack and Margaret possessing a combined 60% interest, and Jennifer possessing a 20% interest. [ECF No. 44, 149–50.]

36. At some point after the 2016 Tax Return was filed, Jack and Margaret unilaterally decided to remove the Debtor from the real estate joint venture. [ECF No. 44, 119.] The Debtor's 2017 Tax Return filed on August 20, 2018 (one day prior to the Petition Date), incorporated herein by reference and attached hereto as **Exhibit 14**, does not show any business interest.

. . .

89. Within the two-year period prior to the Petition Date, that Debtor possessed at minimum a 20% interest in a real estate rental business.

90. Jack and Margaret unilaterally decided to terminate the Debtor's 20% interest in the real estate business.

. . .

99. The transfer of the Debtor's 20% interest in the real estate business was made specifically to avoid an impending judgment against the Debtor. The transfer occurred shortly after the Alabama Supreme Court affirmed the Debtor's liability on Janice's loan, but shortly before the trial court rendered final judgment.

. . .

120. Within the two-year period prior to the Petition Date, that Debtor possessed at minimum a 20% interest in a real estate rental business.

121. Jack and Margaret unilaterally decided to terminate the Debtor's 20% interest in the real estate business.

(Compl. at ¶¶ 34, 35, 36, 89, 90, 99, 120, 121, Adv. P. 19-03041, ECF No. 1.) The Defendants unqualifiedly admitted each of these allegations, save for Paragraph 99, and even with respect to the allegations in that paragraph they denied them only "to the extent that they allege that Janice ever could have had any right to claim against the accounts, funds, interest, etc." (Answer at ¶ 4, Adv. P. 19-03041, ECF No. 4.) Even with respect to Paragraph 99 (which the Defendants admitted in part and denied in part), it is more than fair to infer that they admitted the part they regarded as true at the time, namely the "transfer of the Debtor's 20% interest in the real estate business . . ." *See* Fed. R. Civ. P. 8(b)(4) (Denying Part of an Allegation).

The admissions concerning the Debtor's specific 20% interest in a real estate business, included in the Defendants' answer, qualify as "judicial admissions," which our Circuit defines as "formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." *Barnes v. Owens–Corning Fiberglas Corp.*, 201 F.3d 815, 829 (6th Cir. 2000) (citation omitted). The admissions, especially those in

Paragraphs 89, 90, 99, 120 and 121, are "deliberate, clear, and unambiguous," another characteristic of a judicial admission. *MacDonald v. Gen. Motors Corp.*, 110 F.3d 337, 340 (6th Cir. 1997). The deliberateness is plain from the context—the Defendants filed their original answer after formally seeking permission to do so—and the clarity and lack of ambiguity are patent from reading the complaint and the answer together. These later admissions (regarding the Debtor's specific share of "an interest in a real estate business" and the termination of that interest), are not admissions of a legal conclusion, such as the Sixth Circuit warned would not qualify as "judicial admissions." *Id.* at 341. They unequivocally admit facts, not opinions or legal conclusions flowing from the application of the law to the facts. *Id.* ("Judicial admissions . . . typically concern only matters of fact[,]" not opinions, legal theories, or legal conclusions).

It is, of course, true that the bankruptcy court, as a trial court, enjoys "broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases," usually upon a showing of inadvertence or mistake. *Goldman & Assocs., P.C. v Kattouah* (*In re Kattouah*), 452 B.R. 604, 608 (E.D. Mich. 2011) (quoting *MacDonald*, 110 F.3d at 340 (quoting *United States v. Belculfine*, 527 F.2d 941, 944 (1st Cir. 1975))). To some extent, the Defendants' motion to amend their answer might have been read as a request to be relieved of the binding effect of the judicial admissions within the pleading, but the perfunctory motion offered no factual support for the change in position, relying almost entirely on the liberality expressed in *Foman v. Davis*, *supra*. The Defendants simply did not anticipate that the court might regard the proposed amendment as a disingenuous shifting of the sands, even though the court foreshadowed the possibility in disapproving the settlement a few weeks earlier. (*See* Mem. at 26, Adv. P. 19-03041, ECF No. 71, noting Jack Wood has "demonstrated a willingness to bend the truth to suit his needs at any time.") The court's observation reflected its dim view of Jack Wood's veracity, plainly implicating the "bad faith or dilatory motive" the Supreme Court in *Foman* expressly identified as a reason to withhold leave to amend a pleading.

Despite this warning, in support of amending the answer, Appellant argued only that the court "had misinterpreted the meaning of some of the responses made in the Answer, and that those misinterpretations did not accurately reflect the meaning of his Answer to the Complaint." (Defs.' Mot. to Amend Answer at ¶ 4, Adv. P. 19-03041, ECF No. 84.) As far as the record on

appeal is concerned, however, the Defendants offered no other argument or justification for the amendment.

The Panel harbors doubts about the applicability of judicial estoppel in this case, but finds it unnecessary to reach the issue because the record supports a finding that the Appellant proposed the amendment in bad faith.[6]

When denying the proposed amendment, the bankruptcy court understandably reached for judicial estoppel as a tool for blunting the gamesmanship and abuse of process the court perceived in the Defendants' deliberately inconsistent approach to this case. Although the Panel finds judicial estoppel inapplicable given the procedural context, the bankruptcy court's criticism of Appellant's motives and aversion to the farfetched argument that the court somehow misinterpreted the answer certainly falls within the examples the Supreme Court offered in *Foman* for determining whether, in the language of Rule 15, "justice so requires" an amendment.[7] The Panel perceives no abuse of discretion in denying the motion to amend under

---

[6]Appellee has not offered any authority within our Circuit where a non-party witness has been estopped from taking a position in a latter proceeding based on his testimony, rather than a position he had taken in prior litigation. That the Panel itself has found no such authority is not surprising because in our Circuit success in a prior proceeding appears to be a prerequisite to applying judicial estoppel in the latter. *See Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982) (citing *City of Kingsport, Tenn. v. Steel & Roof Structure, Inc.*, 500 F.2d 617, 620 (6th Cir. 1974) (judicial estoppel applied only "where the party was successful in its initial reliance and tried to change positions in subsequent litigation")). Here, although the bankruptcy court credited Appellant's testimony at the hearing on the conversion motion about the existence of the Joint Venture and the extent of the Debtor's share, it cannot be said that Appellant prevailed in that proceeding since he was a mere witness. The more fit remedy for addressing inconsistent prior testimony of a witness is impeachment under Fed. R. Evid. 613, not estoppel. As the Sixth Circuit observed after warning courts to use caution when invoking judicial estoppel, "[i]n the federal courts, we rely on impeachment during cross-examination to deter parties from contradicting their prior statements to the court." *Teledyne Indus., Inc. v. N.L.R.B.*, 911 F.2d 1214, 1218 (6th Cir. 1990). A cautious application of judicial estoppel counsels against applying it to statements made by a non-party when he was merely a witness. In any event, the Panel finds it unnecessary, not to mention unwise, to decide the question here where it may affirm the denial of the amendment on the more pedestrian basis of "bad faith or dilatory motive," identified in *Foman*, *supra*.

[7]A short time after the bankruptcy court denied the proposed amendment, the Defendants amplified their reasons for amending their answer, undercutting their own argument that their answer was "misinterpreted": "[t]he Defendants' understanding of the legal meaning of a 'joint venture' has changed since they filed their Answer, and their later-filed discovery responses reflect that change in understanding prior to the Plaintiff making this motion." (Defs.' Resp. to Pls.' Mot. for Partial Summ. J. at 3, Adv. P. 19-03041, ECF No. 95.) In other words, the bankruptcy court's interpretation of the answer reflected *the Appellant's* original understanding that his daughter held an interest in the Joint Venture. Appellant's later suggestion, without any factual support, that somehow the Internal Revenue Service ("IRS") disabused him of his earlier "understanding" that his daughter had a 20% share in the Joint Venture is indicative of bad faith. It is more plausible to conclude that it was useful for Appellant to swear to the existence of a Joint Venture (and his daughter's interest therein) when he was allocating losses from the family's real estate business to his daughters (and when he favored conversion to escape the scrutiny of a chapter 7

the circumstances of the case, particularly given the bankruptcy court's obvious familiarity with the issues and the parties based on at least two evidentiary hearings.

Having concluded that the bankruptcy court acted within its discretion in withholding leave to amend the answer, the Panel turns next to Appellee's Motion for PSJ and Appellant's response.

## 2. Grant of Motion for PSJ Under Rule 56

We review *de novo* a trial court's decision to enter summary judgment, likely on the theory that the appellate court is in just as good a position to review a summary judgment record as a trial court. *See Dymarkowski v. Savage* (*In re Hadley*), 561 B.R. 384, 388 (B.A.P. 6th Cir. 2016) (*de novo* review of summary judgment decisions). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Church Joint Venture, L.P. v. Blasingame* (*In re Blasingame*), 597 B.R. 614, 616 (B.A.P. 6th Cir. 2019), *aff'd*, 986 F.3d 633 (6th Cir. 2021) (citation omitted). Summary judgment is appropriate if the moving party shows "that there is no genuine dispute as to any material fact" and he is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Scott v. First S. Nat. Bank*, 936 F.3d 509, 516 (6th Cir. 2019).

We find that the bankruptcy court properly entered summary judgment regarding the transfers of the various bank accounts and the Joint Venture on the theory of actual intent to hinder, delay, and defraud Janice Gerstenecker. For reasons set forth briefly below, however, we find it unnecessary and unwise to opine on the merits of Appellee's other theories of claim.

As he did in challenging the bankruptcy court's decision on the Motion to Amend, Appellant makes much of the role that judicial estoppel purportedly played in the bankruptcy court's decision to grant Appellee's motion for partial summary judgment. We reject that argument after carefully considering the record and conclude that the bankruptcy court properly entered summary judgment. We do so without reference to any estoppel, but based on a

---

trustee), and less helpful after the IRS concluded its audit, evidently regarding the allocation as unlawful, thus opening the family up to tax claims and bringing the Joint Venture within the reach of her creditors in the bankruptcy case. This is paradigmatically "cynical gamesmanship," in the words of *Browning v. Levy*, *supra*, even if the other elements of judicial estoppel may not be present.

straightforward evaluation of the usual summary judgment burdens under Rule 56 as informed by longstanding Supreme Court guidance in the trio of opinions *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505 (1986), and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S. Ct. 1348 (1986).

> We begin with the procedure prescribed in Rule 56:
>
> (1) *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>>
>> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. With respect to the entry of summary judgment, the initial question is always whether the moving party met its burden under Rule 56(c)(1). The answer to this question depends to a considerable extent on the locus of the burden of proof. Here, because Appellee is seeking to avoid and recover transferred property or its value, the law requires him to shoulder the burden of proving the elements of the cause of action.

In the bankruptcy court, although Appellee asserted a preference and fraudulent transfer claim both dependent to some extent on the Debtor's insolvency, he also asserted several counts (state and federal) challenging the transfers of the Bank Accounts and the Joint Venture as made with actual intent to hinder, delay and defraud Janice Gerstenecker to frustrate her collection efforts. (*See* Compl. at Count I, III, and IV–VI, Adv. P. 19-03041, ECF No. 1.) For present purposes, the operative provisions of the respective "actual intent" statutes are substantially

similar, both providing a basis for avoiding any transfer made "with actual intent to hinder, delay, or defraud" a creditor. *Compare* 11 U.S.C. § 548(a)(1)(A), *with* K.R.S. § 378A.040(1)(a). Both statutes rely on, or recite in the case of the state law, the familiar "badges of fraud" to assist in determining actual intent, including (for example) a transfer made to an insider, retention of possession, disclosure or concealment, value of consideration received, insolvency, and timing of the transfer in relation to the debt at issue. *Schilling v. Heavrin* (*In re Triple S Rests., Inc.*), 422 F.3d 405, 414 (6th Cir. 2005) ("Badges of fraud are circumstances so frequently attending fraudulent transfers that an inference of fraud arises from them.") (citation omitted). Under either theory, a trustee will prevail if he proves that the debtor made or suffered (1) a "transfer"[8] (2) of an interest of the debtor in property (3) with actual intent to hinder, delay, or defraud a creditor. *Id.* at 410.

Appellee supported his summary judgment burden of establishing the transfer of an interest of the Debtor in the Joint Venture initially by highlighting Jack Wood's testimony during the hearing on the Conversion Motion in which he explained his view (at that time) that the Debtor held a 20% interest in a "joint venture." Appellee also directed the court to the Debtor's 2016 tax returns, which included a Schedule E (Form 1040) (Supplemental Income and Loss) showing losses in the amount of $44,012.00 allocable to the Debtor's 20% ownership in the Joint Venture. The Schedule E listed "Jack & Margarette & Julie & Jennifer" as the "Name(s) shown on return." The amount of the loss the Debtor claimed on her 2016 return ($44,012.00) roughly equates to 20% of the total loss for the Joint Venture recognized on line 26 of Schedule E. The handwritten percentages on the foot of that schedule, reflect a division of interests in the Joint Venture among the Debtor, her sister, and her parents, with the Debtor sharing 20%. The Schedule E forms for 2014 and 2015 are to similar effect. In the hearing on the Conversion Motion, Appellant, when asked to explain the percentages on the 2016 Tax Return, stated "[t]hat's the division of the joint venture." (Compl. Exh. 6 at 149, Adv. P. 19-03041, ECF No. 1-13.) Appellee also pointed to the Appellant's admissions within the answer, as Rule 56 plainly permits. Fed. R. Civ. P. 56(c)(1).

---

[8]Each statute broadly defines the term "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with" an interest in property. *Compare* 11 U.S.C. § 101(54)(D) *with* K.R.S. § 378A.010(16).

The Trustee certainly adduced evidence from which a reasonable jury could conclude that the Debtor had a 20% interest in the Joint Venture. This aspect of the *prima facie* case depended not on judicial estoppel, but instead simply on the admissions reflected in the transcript of the prior hearings, the admissions within the answer, and the tax-related documents.[9]

Similarly with respect to establishing the Debtor's interest in the Bank Accounts, Appellee offered documents (bank statements, signature cards, account agreements, withdrawal slips) showing that the various accounts were, in part, titled in the Debtor's name. In addition, the Defendants admitted in their answer that the Bank Accounts were funded in part by the Debtor's tax refunds. (See Answer at ¶ 1, Adv. P. 19-03041, ECF No. 4 ("The Closed Accounts were funded, in part, by tax refunds issued to the Debtor.").)

A reasonable fact finder could find from these datapoints that the Debtor held an interest in the Bank Accounts and the Joint Venture. Accordingly, the Panel finds that Appellee met his *prima facie* burden on the second element of the fraudulent transfer case by offering evidence "of an interest of the debtor in property."

Appellee also surmounts the related summary judgment hurdle of establishing a "transfer" with respect to both the Bank Accounts and the Joint Venture, again relying on Appellant's testimony and the Defendants' answer. For example, according to Appellant's testimony in connection with the Conversion Motion, in response to a question concerning why the Joint Venture did not appear on the Debtor's 2017 tax returns (which he prepared), he said, "[a]t that time, we had decided that we didn't want Julie in the joint venture." (Tr. 119:7-10, Adv. P. 19-03041, ECF No. 1-13.)

This testimony, together with the tax documents, warrants a finding that the Debtor's interest in the Joint Venture was transferred away from her voluntarily or involuntarily, pursuant to the definition in both state and federal fraudulent transfer statutes. Appellee offered similar

---

[9]*See Cadle Co. II, Inc. v. Gasbusters Prod. I Ltd. P'ship*, 441 F. App'x 310, 312–13 (6th Cir. 2011) ("Pleadings in a prior case may be used as evidentiary admissions. . . [while judicial admissions] are formal admissions in the pleadings of a present action, which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. . . . Not only are such admissions and stipulations binding before the trial court, but they are binding on appeal as well.") (citations and internal quotation marks omitted); *see also Ferguson v. Neighborhood Hous., Servs. of Cleveland, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986).

testimony tying the transfer of funds from the Bank Accounts to accounts beyond the Debtor's reach. (*Id*. at 121:18-122:2.)

Even in their proposed amended answer, the Defendants admitted the fact of the transfer by narrowly denying the Plaintiff's allegations within paragraphs 84 and 99 of the complaint only "to the extent that they allege that Janice ever could have had any right to claim against the accounts, funds, interest, etc." (Answer ¶ 4; Prop. Am. Answer ¶ 8, Adv. P 19-03041, ECF Nos. 4 and 84.)

The bankruptcy court did not err in finding that Appellee met his summary judgment burden on the "transfer" element of the cause of action based on Appellant's testimony and judicial admission, not judicial estoppel.

Finally, Appellee met his burden of showing Debtor's intent to hinder, delay, or defraud "a creditor": the record leaves no doubt that Janice Gerstenecker was that creditor. Appellant admitted as much several times, in open court and in pleadings. (*E.g.*, Tr. at 119: 7-10; 121:18-122:2, Adv. P. 19-03041, ECF No. 1-13.) In addition, it does not appear that the proposed amendment would have had any impact on one of the most crucial elements of this case – the allegation that the transfers of the Bank Accounts and the interest in the Joint Venture were made with actual intent to hinder, delay or defraud Janice Gerstenecker. (Compl. ¶¶ 84, 99, Adv. P 19-03041, ECF No. 1.) The proposed amended answer continued to admit what the Defendants admitted in their original answer as it relates to the purpose of the transfer.[10] Thus, it would have remained totally undisputed, even if the proposed amended answer had been allowed, that the transfers "[were] made specifically to avoid an impending judgment against the Debtor." (Compl. ¶ 99, Adv. P 19-03041, ECF No. 1.)

Although the bankruptcy court did not articulate the familiar "badges of fraud" analysis given Appellant's testimonial revelation of the motives for the transfer, the record nevertheless

---

[10]As noted above, in the Answer at paragraph 4 and proposed amended Answer at paragraph 8, the Defendants respond to paragraphs 84 and 99 of the Complaint with a denial only "to the extent that they allege that Janice ever could have had any right to claim against the accounts, funds, interest, etc." The Defendants did not deny that the transfers occurred or the motivation for the transfers, neither in the original nor the proposed amended Answer. (Answer ¶ 4; Prop. Am. Answer ¶ 8, Adv. P 19-03041, ECF Nos. 4 and 84.)

includes several such badges.  For example, the proximity between the timing of the transfers and the Alabama judgment and its domestication in Kentucky is obvious.  *See*, *e.g.*, K.R.S. § 378A.040(2)(j).  Another badge: the Debtor omitted the transfers from her schedules.  *Id.* § 378A.040(2)(c).  Still more:  the Debtor's family members received the benefit of each transfer under review—either the Debtor's father, mother, or sister, or some combination of these close relatives.  *Id.* § 378A.040(2)(a).  At least with respect to the transfer of the Joint Venture, when viewed in conjunction with the Debtor's schedules (which listed very few assets), a reasonable fact finder could conclude that the termination of her interest in the alleged real estate business effected a transfer of substantially all assets.  *Id*. § 378A.040(2)(g).

Further, the Defendants' answer and Appellant's testimony together supply evidence from which a reasonable fact finder could conclude that the Debtor received nothing upon the transfer of the Bank Accounts to her father and sister, or upon the termination of her interest in the real estate business—another enumerated badge of fraud.  Similarly, with respect to the transfer of the Debtor's 20% interest in the Joint Venture, the Trustee pointed to the bankruptcy court's earlier finding in connection with the Conversion Motion to the effect that the Debtor received nothing on account of her interest when her father "unilaterally" decided to remove her from the Joint Venture.  *Id*. § 378A.040(2)(h).  In their answer to the complaint, the Defendants denied that the Debtor received nothing for her interest in the Joint Venture,[11] and the transcript of Appellant's testimony on this issue is silent.  Nevertheless, there does not appear to be any dispute that the Debtor received nothing in exchange—likely because Appellant's current position (which the bankruptcy court and this Panel both reject) is that he had no obligation to pay the Debtor because she had no interest.  (Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. at ¶ 42, Adv. P. 19-03041, ECF No. 95 ("Debtor could not have been entitled to consideration for a transfer of assets belonging to another and for which she held no ownership rights.").)  The Defendants did not dispute that the Debtor received nothing in exchange for the transfers.

The Panel acknowledges parts of the record suggesting that the Debtor was not particularly involved in her own financial life or in the transfers at the heart of this case, and that

---

[11]It is worth reiterating here that a party may not rest on the pleadings in response to a duly supported summary judgment motion.  *Celotex*, *supra*; *Anderson*, *supra; Matsushita Elec.*, *supra.*

the evidence of her father's intent is not, strictly speaking, evidence of the Debtor's intent. Regardless, for centuries courts have acknowledged the role that the badges of fraud may play in establishing a debtor's actual intent to hinder, delay, or defraud creditors, and the badges of fraud practically leap from this record. *See, e.g.*, *Spradlin v. East Coast Miner, LLC* (*In re Licking River Mining, LLC*), 603 B.R. 336, 382 (Bankr. E.D. Ky. 2019) ("Plaintiff[] must first demonstrate sufficient badges of fraud so that it 'would be unreasonable . . . to find that the transfer was not fraudulent.'") (quoting *Russell City Feed Mill, Inc. v. Kimbler*, 520 S.W.2d 309, 311 (Ky. 1975)). Moreover, the record reflects that the bankruptcy court denied the Debtor's discharge under 11 U.S.C. § 727(a)(2)(A), a statute that condemns a debtor's intent to defraud creditors in language nearly identical to § 548(a)(1)(A). *In re Wreyford*, 505 B.R. 47, 56 (Bankr. D.N.M. 2014) (noting the similarity).

To summarize, our *de novo* review of the record confirms that the Appellee met his burden under Rule 56 by citing to "particular parts of materials in the record" to establish his *prima facie* case to avoid the transfers of the Debtor's interest in the Bank Accounts and the Joint Venture as fraudulent transfers. Because the Appellee properly supported his summary judgment motion, the burden under Rule 56 shifted to the Defendants to show that "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B).

Defendants responded to the properly supported motion with bluster and obfuscation, mostly by pointing to their original answer and the one they had hoped to file. For example, on the issue of whether the Debtor had an interest in the Bank Accounts, the Defendants said the following in their response brief:

> The bank accounts with PNC only ever contained funds deposited by, or for, Jack. Some of Debtor's tax refunds were deposited into at least one of the BB&T accounts. The Defendants' admission in their Answer to this allegation of the Complaint only admitted that the accounts were funded **in part** by Debtor's tax refunds. The BB&T accounts were **part** of the accounts listed in the allegations of Paragraph 18 of the Complaint. This misinterpretation of the Defendant's Answer is one reason the Defendants sought to amend their Answer.

(Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. at ¶ 14, Adv. P. 19-03041, ECF No. 95.)

Similarly, in the next paragraph of their response, the Defendants simply stated that "[t]he Debtor never possessed an ownership interest in the PNC accounts and was merely a beneficiary of the BB&T accounts which were being held in trust for the benefit of the Debtor by Jack going back to before she reached the age of majority." (*Id.* at ¶ 16.) Given the not insubstantial stakes ($47,701.28 on deposit) it is striking that the Defendants could not even muster a single affidavit in opposition to the Appellee's record-citations to contest the asserted fact that the Debtor held an interest in the Bank Accounts. Indeed, to a considerable extent, by admitting that the BB&T accounts were held in trust for the benefit of the Debtor since she was a child, even the statements of Appellant's counsel tended to corroborate the Appellee's assertions of an interest therein.

Defendants' response to Appellee's assertion that the Debtor held an ownership interest in the family's real estate business was similarly deficient, unadorned by any citation to the record, or any affidavit or solemn declaration and wholly dependent, again, on counsel's statements in the brief and the answer they were not permitted to file:

> 38. In the time between the Defendants' Answer being filed and present the IRS has determined that no such Real Estate Business existed, and that even if it did, that Debtor never possessed any interest or ownership. The IRS disallowed the Debtor's previous tax deductions related to the "Real Estate Business." The Defendants' understanding of the legal meaning of a "joint venture" has changed since they filed their Answer, and their later-filed discovery responses reflect that change in understanding prior to the Plaintiff making this motion. This misinterpretation, and willful ignorance on the part of the Plaintiff is one reason the Defendants sought to amend their Answer.
>
> 41. Debtor never possessed any equity or interest in any Real Estate Business. The Defendants denied this allegation of the Complaint, and no proof has been put forward by the Plaintiff's to show such a business interest exists.
>
> 42. Debtor could not have been entitled to consideration for a transfer of assets belonging to another and for which she held no ownership rights.

(*Id.* at ¶¶ 38, 41, and 42.) Appellant may have had his own reasons for not offering additional statements under penalty of perjury touching on his tax reporting practices, but it would have

been a fairly simple matter to prepare an affidavit or solemn declaration,[12] either for Appellant or his tax preparers or the Debtor or even an IRS agent, to support the explanation his counsel offered about the supposed disallowance of "the Debtor's previous tax deductions." *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006) ("Arguments in parties' briefs are not evidence."). Within Paragraph 41 of the Disputed Material Facts the Defendants state that they denied the allegation within the complaint that the Debtor held an interest in the real estate business, but that is plainly false. A cursory review of the Complaint at ¶¶ 89 and 120, and the Answer at ¶ 1, refutes the statement. Moreover, it is impossible to read the same portions of the pleadings, the tax documents, and the transcript of Appellant's testimony during the hearing on the Conversion Motion and accept the statement that "no proof has been put forward by the Plaintiff to show such a business interest exists." (Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. at ¶ 41, Adv. P. 19-03041, ECF No. 95.)

Therefore, the main opposition to the evidence tending to show that the Debtor held a 20% interest in the Joint Venture took the form of unsworn statements of counsel and a vague reference to "later-filed discovery responses [that] reflect the change in understanding" about the existence of the Joint Venture. (*Id.* at ¶ 40.) It should go without saying, because Rule 56 says it, that a court "need consider only the cited materials," and is not required to comb through the record. Fed. R. Civ. P. 56(c)(3); *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992) (When a party fails to oppose summary judgment, "the trial court [is not required to] conduct its own probing investigation of the record" to discover an issue of material fact.).

Finally, the Panel acknowledges Appellant's two citations to the record within the opposition to the Motion for PSJ (the references to Exhibit A: RFA No. 4 and Response to Interrogatory 16 and to ECF No. 44, pp. 52–64 and 118–19.) These references do point to sworn statements, but ultimately do not suffice to raise a genuine issue of material fact. The gist of the statements in response to the RFA No. 4 and Interrogatory 16 is that "the IRS found that the Debtor had no such [real estate] loss because she had no such business interest," and, likewise, some unidentified person at the IRS "specifically stated that t[he] Debtor had no such [real

---

[12]In federal practice, parties can easily supply testimonial evidence in support of, or in response to, a motion. *See* Fed. R. Civ. P. 43(b); 28 U.S.C. § 1746.

estate] business and so she could not claim any losses." (Defs.' Mem. of Law in Opposition to Pl.'s Mot. for Summ. J. Exh. A, Adv. P. 19-03041, ECF No. 29.)  Assuming, *arguendo*, that Appellant could escape the binding effect of the judicial admissions included within the Answer, he nevertheless failed to properly challenge the Appellee's evidence on this point.  For example, the supposed (and undocumented) findings of the IRS or statements of some unidentified agent are clearly offered for the truth of the matter asserted, namely that the Debtor had no interest in the real estate business.  Yet, Appellant made no effort to explain how the vague report of an IRS agent's denial of a joint venture would have been presented at trial,[13] and without such an explanation the statement is simply inadmissible hearsay, hardly a sufficient basis for opposing the Motion for PSJ.

As for the citations to Appellant's prior testimony (found within ECF No. 44, pp. 52–64 and 118–19), again assuming that Appellant could escape the binding effect of the judicial admission reflected in the Answer, he cites the transcript excerpts to show that he "understood that the joint venture was fictional and stated that he believed the IRS would allow such deductions based on its previous reviews of his tax returns," that the Debtor was unaware of what Appellant was doing with his real estate business, and she received no profits or income nor contributed anything to it.  He argues, without citation to authority, that "[i]t is a basic principal [sic] of a joint venture that partners share equally in losses and profits; Debtor never shared in either." (Defs.' Resp. to Pl.'s Mot. for Partial Summ. J. at 9, Adv. P. 19-03041, ECF No. 95.)  In effect, he argues that "the 'joint venture' was in fact nothing more than Jack's way of characterizing and justifying giving the Debtor his tax deductions."  (*Id.*)  It is no wonder the bankruptcy court rejected the cynical argument which, boiled down to essentials is this:  *shame on the bankruptcy court for accepting the fiction I invented to justify my irregular and now-discredited scheme for maximizing tax benefits for myself and my family*.

We cannot fault the bankruptcy court for not accepting the Defendant's argument about the Joint Venture deficiencies when the Defendants failed to develop the legal argument by even

---

[13]*Cf. Lee v. Offshore Logistical &Transp., L.L.C.*, 859 F.3d 353 (5th Cir. 2017) (district court erred in rejecting unsworn statement as hearsay on Rule 56 motion where proponent of the statement argued that the declarant would testify at trial).

a single citation to Kentucky law for the point. Summary judgment is concerned with ferreting out factual disputes, it is true, but it also invites the parties to guide the court on matters of law. Fed. R. Civ. P. 56. Strictly speaking, the Defendants' response to the Motion for PSJ did neither.

The Panel searched the Defendants' response to the Motion for PSJ in vain looking for evidence, rather than argument,[14] that meets the requirements of Rule 56(c), and found none. And, even if the Defendants had been permitted to amend their answer, as stated before, our cases have long held that a party who resists summary judgment cannot "rest on his pleadings." *Celotex*, 477 U.S. at 325; *Anderson*, 477 U.S. at 247–48; *Matsushita Elec.*, 475 U.S. at 586–87. At the end of the day, blusterous denials are no substitute for evidence, especially in response to a properly supported summary judgment motion.

Because the Defendants, including Appellant, failed to properly address Appellee's assertions of fact in response to the Motion for PSJ on the fraudulent conveyance counts premised on actual fraud, Rule 56 authorized the bankruptcy court to consider Appellee's factual assertions as undisputed for purposes of the motion. And, because the undisputed facts established that Appellee was entitled to judgment as a matter of law, the bankruptcy court properly granted partial summary judgment. Fed. R. Civ. P. 56(e)(2) and (3). This decision ripened into a final judgment when the parties later stipulated to the value of the Debtor's share in the Joint Venture, albeit subject to the Defendants' contention that she held no such interest. Fed. R. Civ. P. 54(b). We affirm the bankruptcy court's judgment because Appellant did not establish that a genuine issue of material fact existed regarding actual intent to hinder, delay, and defraud Janice Gerstenecker in collecting the Alabama judgment under both 11 U.S.C. § 548(a)(1) and K.R.S. § 378A.040(1)(a). Without any meaningful or persuasive challenge to avoidance, the Panel similarly affirms the decision to permit recovery under 11 U.S.C. § 550.

The Panel does not consider the other causes of action for two reasons. First, affirmance on the two "actual intent" prongs of the fraudulent transfer provisions as to the Bank Accounts and the Joint Venture gives Appellee complete relief, making it unnecessary to opine on the other counts premised on the Debtor's insolvency. Second, and more specifically with respect to

---

[14]*Duha*, 448 F.3d at 879 ("Arguments in parties' briefs are not evidence.").

the preference count under 11 U.S.C. § 547(b), the remedy under that statute depends on a finding of insolvency at the time of the transfer (exactly one year before the petition date) but the record supports the bankruptcy court's conclusion that the Debtor held a 20% interest in the family real estate business at the time, with a value well in excess of Janice Gerstenecker's claim—evidently the only meaningful claim against the Debtor.

We have considered the Appellant's other arguments and find them lacking in merit. Accordingly, the judgment of the bankruptcy court is AFFIRMED.